```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF TENNESSEE
                       WESTERN DIVISION
```

| | |
|---|---|
| UNITED STATES OF AMERICA,   ) | |
| ) | |
| )  | Case No. 07-20040 |
| Plaintiff,   ) | |
| ) | |
| v.                           ) | |
| ) | |
| BERNARD AVERY, JR.,          ) | |
| ) | |
| ) | |
| Defendant.      ) | |

**ORDER ADOPTING AS MODIFIED MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION ON MOTION TO SUPPRESS**

Before the Court are Defendant Bernard Avery, Jr.'s objections to the Report and Recommendation of Magistrate Judge Tu M. Pham. (See Report and Recommendation on Defendant's Motion to Suppress, Dkt. No. 250.) ("Report") Magistrate Judge Pham recommended that the Court deny Avery's Motion to Suppress the incriminating evidence found as a result of an investigatory stop made by officers with the Memphis Police Department and subsequent statements Avery made to Memphis Police detectives. After a review of Avery's four legal objections, the Court OVERRULES them and ADOPTS the Report of the Magistrate AS MODIFIED.

I.   **Procedural Background**

On February 1, 2007, the grand jury returned a seven-count indictment against Avery charging him with a series of crimes in Memphis, Tennessee, including the December 27, 2006, robbery of a Mapco Express convenience store; the December 27, 2006, robbery of Maxi Foods; the December 29, 2006, robbery of the Memphis Area Teachers Credit Union; and the January 11, 2007, robbery of an AmSouth Bank branch, in violation of 18 U.S.C. §§ 2, 1951, and 2113(a).  The grand jury also charged Avery with four counts of using a firearm in relation to a crime of violence – one count for each robbery – in violation of 18 U.S.C. § 924(c).  Avery has entered a plea of not guilty to each count of the indictment, and his jury trial will commence on February 8, 2010.

Avery has filed a Motion to Suppress the evidence officers obtained following his detention and subsequent arrest on January 13, 2007.  Avery alleges that the initial stop of his vehicle and resulting search violated his Fourth Amendment right to be free of unreasonable searches and seizures.  (See Defendant's Motion to Suppress, Dkt. No. 196, at 2-4.)  Avery also contends that the Court should suppress the incriminating statements he made during an interview with Memphis Police detectives because he did not knowingly, intelligently, and voluntarily waive his right to remain silent, violating the Due

Process rights recognized by the Supreme Court in Miranda v. Arizona, 384 U.S. 436 (1966).

By order dated April 17, 2009, the Court referred the Motion to Magistrate Judge Pham for hearing and recommendation. (See Order of Referral, Dkt. No. 198.) The Magistrate Judge held two days of hearings on May 1 and 27, 2009; heard testimony from eight witnesses, including the Defendant; and considered fifteen exhibits before issuing his Report. The November 4, 2009, Report recommended that the Court deny Avery's Motion. (Report at 2.) Defendant timely filed his objections to the Report. (Objections to Report and Recommendations, Dkt. No. 252.) ("Objections") Defendant does not challenge any of the Magistrate Judge's findings of fact, but raises four legal challenges to the recommended conclusions: 1) the Terry stop was actually an arrest; 2) officers did not have probable cause to arrest Avery; 3) the subsequent search violated the Fourth Amendment; and 4) police took Avery's statement in violation of Miranda. Because Defendant does not challenge the Magistrate Judge's proposed findings of fact, the Court ADOPTS those findings in whole and will discuss them as they are relevant when analyzing Defendant's legal objections. (See Report at 2-26.)

**II.   Standard of Review**

When a party objects to a magistrate judge's ruling on a Motion to Suppress, a district court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). After reviewing the evidence, the Court is free to accept, reject, or modify the proposed findings or recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). A district court is not required to review – under a de novo or any other standard — those aspects of the report and recommendation to which no objection is made. Thomas v. Arn, 474 U.S. 140, 150 (1985). The Court should adopt the findings and rulings of the magistrate judge to which a party files no specific objection. Id.; United States v. Walters, 638 F.2d 947, 950 (6th Cir. 1981.)

**III.  Analysis**

    **A. The Stop of the Van was a Proper Terry Stop**

Avery's first objection to the Magistrate Judge's Report is that Memphis Police officers did not effect a proper Terry stop. Pointing to the degree of force the officers used, particularly the drawing of their weapons, Avery asserts that the investigative stop was an illegal arrest unsupported by probable cause. (Objections at 3-4.) Avery reasons that the officers' actions "exceed[ed] the bounds permitted by reasonable

4

suspicion," and the illegal arrest tainted all evidence found thereafter. (Id. at 3.)

Following the robberies at the Memphis Area Teachers Credit Union and the AmSouth branch in North Memphis and the separate murder of Raymond Brady during a January 8, 2007, robbery attempt[1], Memphis Police issued a "Be On the Look Out" ("BOLO") for an older model, green Mercury Villager van with a black luggage rack on its roof, matching hub caps, and a temporary "drive out" tag on the right side of its rear window. (Report at 3-4.) Witnesses reported and security cameras confirmed that this van served as the get-away vehicle for all three crimes. (Id. at 3.) Shortly before midnight on January 12, 2007, officers on patrol in Memphis' North Precinct spotted a vehicle exactly matching the BOLO description "in an area close" to where the AmSouth Bank robbery had occurred. (Id. at 4.) Officers initiated a stop of the vehicle and approached the van with their guns drawn. Officer William S. Priddy shouted for the van's two occupants to "freeze." (Id. at 5.)

Defendant Avery was in the van's front passenger seat. His wife, Sherika Avery, sat in the driver's seat. Priddy approached Avery and placed his hands against Avery's chest to "keep[] him where he was." (Id. (alteration in original).) When Avery relaxed, Priddy immediately saw an empty shoulder

---

[1] The pending federal indictment does not charge Avery with Brady's murder.

5

holster and asked Avery where the gun was. Avery responded that it was under his seat. (Id.) Looking toward the floorboard, Priddy saw the pistol's butt by Avery's feet. Priddy then removed Avery from the van, handcuffed him, and placed him in the back of the patrol car. Another officer did the same with Sherika Avery. (Id.) Officers then searched the van, where they found $800 in cash and a red t-shirt with a large print design that matched the shirt worn by the male passenger in the get-away van during the AmSouth robbery. (See id. at 3, 5.) After officers had the van towed, an inventory search revealed that the van also contained a small amount of marijuana, a shotgun, and ammunition. (Id. at 6.)

Avery argues that the above facts demonstrate that his initial seizure by officers was an arrest rather than a proper investigative stop under Terry v. Ohio, 392 U.S. 1 (1968). Although Avery "practically concede[s]" that officers had reasonable suspicion to warrant an investigative stop of Avery's van, Avery asserts that Officer Priddy's actions went further than what was reasonable. (Objections at 2.) Avery reasons that the officers' approach to the van with guns drawn combined with their handcuffing Avery and placing him in the back of a squad car necessitates a conclusion that he was arrested rather than detained pursuant to Terry. (Id. at 3-5.)

Avery is mistaken. When supported by reasonable suspicion, police officers may initiate an investigatory stop of a vehicle. United States v. Jacob, 377 F.3d 573, 577 (6th Cir. 2004). Courts consider whether reasonable suspicion exists by examining whether "the totality of the circumstances" leads to "a particularized and objective basis for suspecting legal wrongdoing." United States v. Arvizu, 534 U.S. 266, 273 (2002) (internal quotation marks and citation omitted). The analysis must look at all of the factors taken together rather than examining each factor individually. Id. at 274-75. "When establishing that a detention, which was not supported by probable cause, was reasonable, the government must demonstrate that . . . the detention and investigative methods used were reasonable under the circumstances." Jacob, 377 F.3d at 578 (internal quotation marks and citations omitted). The degree of force employed by the officers during the detention "must be reasonably related in scope to the situation at hand." Id. (internal quotation marks and citations omitted).

Officers clearly had a reasonable suspicion sufficient to justify an investigative stop of Avery's van. The van matched the BOLO description in every detail down to the drive-out tag on the right side of the rear window. (Report at 4-5.) Officers spotted the van cruising in the same area where the AmSouth Bank robbery had occurred. (Id. at 4.) These two facts

7

combine to give officers more than enough suspicion to warrant a temporary detention of the vehicle and its occupants to allow for further investigation. See United States v. Sokolow, 490 U.S. 1, 7 (1989) (noting that the level of suspicion necessary for an investigative stop is "considerably less than proof of wrongdoing by a preponderance of the evidence").

The actions of the officers once the van stopped did not convert Avery's detention into an arrest. Officers may use any method "reasonable under the circumstances" when conducting an investigative detention. United States v. Heath, 259 F.3d 522, 529 (6th Cir. 2001) (internal quotation marks and citation omitted). Here, officers knew that a vehicle matching the description of Avery's van had been involved in at least two bank robberies and a murder. (Objections at 2-3.) Approaching a van in which a murder suspect could be found with weapons drawn is imminently reasonable. Acting otherwise would be foolhardy. Accord Jacob, 377 F.3d at 579 (finding that officers' approaching a car with their weapons drawn when the car had lunged forward did not convert a Terry stop into an arrest); Heath, 259 F.3d at 530 (officers could rely on their experience, conclude that "weapons are frequently used in drug transactions," and draw their weapons when detaining a suspect's car).

The handcuffing of Avery and his subsequent placement in the back of a patrol car did not change the nature of the stop. In Jacob, the Sixth Circuit held that it was reasonable for officers to handcuff and place a suspect in the back of a police car when officers sought to stop the defendant on suspicion of drug trafficking and the vehicle "lunged forward [as if] attempting to escape." 377 F.3d at 579. Because the officers' actions were reasonable protective measures under the circumstances, the investigatory stop did not ripen into an arrest once the suspect was secure in the back of the police car. Id. at 579-80. But see United States v. Richardson, 949 F.2d 851, 857 (6th Cir. 1991) (where officers' placing suspect in patrol car is unreasonable, investigatory stop ripens into arrest). It remained instead a Terry stop while the officers "diligently pursued a means of investigation that was likely to confirm or dispel their suspicions." Id. at 580. Here, it was reasonable for Officer Priddy to secure Avery in the back of the patrol car after discovering that Avery had a gun before seeking to confirm or dispel his suspicions. Magistrate Judge Pham's Report was not contrary to law, and the Court OVERRULES Avery's first objection

### B. The Seizure of Evidence from the Van Did Not Violate the Fourth Amendment

The Magistrate Judge concluded that, when Officer Priddy discovered the firearm beneath Avery's seat, he had probable cause to arrest Avery for the robberies. The resulting search was then permissible as a search incident to arrest under New York v. Belton, 453 U.S. 454, 460 (1980). (See Report at 29-30.) Avery objects to both conclusions. (Objections at 6-13.) The Court finds that intervening case law makes reliance on Belton inappropriate. See Arizona v. Gant, 129 S. Ct. 1710, 1719 (2009) (construing Belton narrowly to allow for a warrantless vehicle search only when an "arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search" (footnote omitted)). The seizure of the evidence by police following their investigatory stop of Avery's van was proper nonetheless under two alternative legal theories.

### 1. Because probable cause existed to search the vehicle, the seizure of evidence was proper

United States v. Ross, 456 U.S. 798, 809 (1982) allows officers to search a vehicle without a warrant if they do so "based on facts that would justify the issuance of a warrant, even though a warrant has not actually been obtained." Thus, if the officers had probable cause to search the vehicle at the time they conducted the search, courts will not suppress the items found merely because the officers lacked the formal

10

paperwork.  Id.; see also U.S. Const. amend. IV ("[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation . . . .").  Courts have defined probable cause "as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion, [that] exist when there is a fair probability, given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place."  United States v. Lattner, 385 F.3d 947, 951 (6th Cir. 2004) (internal quotation marks and citations omitted).

At the time officers searched Avery's van, they knew the following facts:  1) Avery's van matched exactly the description of the get-away vehicle used in two robberies and a murder down to the drive-out tag on the right side of the rear window and the roof rack on top (Report at 4); 2) a female driver and a male passenger occupied the van, the same combination observed by security cameras at the AmSouth robbery (id. at 3); 3) officers spotted the van driving in the same neighborhood as the robberies (id. at 4); 4) Avery was armed and had stowed his weapon beneath his seat.  (Id. at 5.)  Taken together, this set of facts would lead an objective observer to conclude there was a "fair probability. . . that contraband or evidence of a crime [would] be found" in Avery's van.  Lattner, 385 F.3d at 951. Officers, therefore, could have obtained a warrant to search

11

Avery's van for evidence relating to the robberies and homicide.[2] Because probable cause existed, "The scope of [the officers'] warrantless search based on probable cause is no narrower – and no broader – than the scope of a search authorized by a warrant supported by probable cause." Ross, 456 U.S. at 823. With a warrant, officers could have searched Avery's entire vehicle. E.g., United States v. Gunter, 551 F.3d 472, 475-76 (6th Cir. 2009). Officers, thus, properly seized the red t-shirt found during the resulting search that matched the one worn by the male passenger of the van that fled the AmSouth robbery.

### 2. Alternatively, the officers had probable cause to arrest Avery and the resulting search was proper under Gant

Magistrate Judge Pham found that, when officers handcuffed Avery and placed him in the back seat of the patrol car, they had probable cause to arrest Avery for the robberies. (Report at 29.) The Magistrate Judge concluded that the search-incident-to-an-arrest exception to the warrant requirement found in Belton could justify officers' subsequent search of Avery's van. (Report at 29); see also Belton, 453 U.S. at 460. The Court agrees that, on discovering Avery's pistol, officers did have probable cause to arrest him for the robberies based on the

---

[2] The uncanny fact that Avery's van exactly matched the detailed description of the vehicle that fled the scenes of the robberies and murder would establish "a nexus between the place to be searched and the evidence sought." United States v. Carpenter, 360 F.3d 591, 594 (6th Cir. 2004) (internal quotation marks and citation omitted).

information known to them at the time, which the Court has earlier recounted. See United States v. Campbell, 486 F.3d 949, 957 (6th Cir. 2007) ("Probable cause exists where the facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person . . . in believing, in the circumstances shown, that the suspect has committed . . . an offense." (internal quotation marks and citation omitted)). Avery's objection to this conclusion is OVERRULED. (See Objections at 6-7.)

The Magistrate Judge's conclusion that Belton could justify the officers' search of the vehicle is untenable in light of the Supreme Court's recent holding in Gant, where the Justices significantly narrowed Belton's holding. Before Gant, many courts interpreted Belton to justify a search of an automobile without a warrant incident to any arrest. See Gant, 129 S. Ct. at 1718 ("[O]ur opinion has been widely understood to allow a vehicle search incident to the arrest of a recent occupant."). In Gant, the Supreme Court clarified that Belton only permits the warrantless search of a car "when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." Gant, 129 S. Ct. at 1719 (footnote omitted). The Court's clarification of Belton's holding is inconsistent with the Magistrate Judge's analysis of why officers could search Avery's van. Once officers had handcuffed

13

Avery and placed him in the back of the patrol car, Avery was no longer "within reaching distance of the passenger compartment," id., making it highly unlikely that Avery could harm any of the officers by reaching for a weapon.  Id. at 1716-17 (explaining Belton's officer-safety rationale).  Belton, therefore, does not support the warrantless search of Avery's van.  See Gant, 129 S. Ct. at 1719.

Nevertheless, the Magistrate Judge's ultimate conclusion is correct.  The Gant majority fashioned a new rule allowing the warrantless search of a car incident to an arrest "when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'"  Id. at 1719 (quoting Thornton v. United States, 514 U.S. 615, 632 (2004) (Scalia, J., concurring in the judgment)).  Here, it was imminently reasonable for officers to believe Avery's van contained evidence related to the crimes for which they arrested him: armed robbery and murder.  The principal element linking the multiple crimes was the older model, green Mercury Villager van. (Report at 2-4.)  Because the van was the common link to all of the crimes, it was reasonable for the officers to conclude that the van was likely to contain evidence related to the robberies.[3]

---

[3] Indeed, the officers' search of Avery's van was even more reasonable than the example the Gant Court cited to support the search of an automobile incident to an arrest under its newly-created exception: arrests for drug offenses.  Cf. 129 S. Ct. at 1719 (noting that officers arrested defendants in Belton and Thornton for drug offenses).

14

The officers' search was proper, and Avery's objections to the search based on Gant are OVERRULED.  See Gant, 129 S. Ct. at 1719.

### C. The Defendant Knowingly, Intelligently, and Voluntarily Waived His Miranda Rights

Avery's final legal objection is to the Magistrate Judge's proposed conclusion that Avery validly waived his Miranda rights and that his post-arrest statements should not be suppressed. Avery argues that "his mental retardation, in conjunction with an IQ of 54 was such that . . . [he] was unable to comprehend fully the rights which [sic] he purportedly waived in the written Miranda form." (Objections at 15.) Avery's argument is unpersuasive.

The Magistrate Judge examined the extensive evidence concerning Avery's mental capacity and concluded, with the support of numerous medical reports, that Avery was malingering and grossly exaggerating his mental limitations. (Report at 36-38.) Even the medical expert whose findings were most favorable to Avery, Dr. John Hutson, admitted on cross examination that Avery would have understood the Miranda warnings Memphis Police detectives gave him before the interrogation. (Id. at 38.) As the Magistrate Judge noted, the detailed, accurate answers Avery gave as to each crime about which detectives questioned him conclusively demonstrate that Avery operates at a far higher

15

level than he admits.  (Id. at 37.)  Because Avery has failed to identify an erroneous finding of the Magistrate Judge or a conclusion that is contrary to law, the Court OVERRULES Avery's final objection.  See 28 U.S.C. § 636(b)(1)(C).

**IV.   Conclusion**

For the foregoing reasons, the Court finds that Avery's objections are not well taken.  The Court, therefore, ADOPTS the Report and Recommendation of the Magistrate Judge AS MODIFIED by this Order and DENIES the Motion to Suppress.

So ordered this 28th day of January, 2010.

                              s/ Samuel H. Mays, Jr.
                              SAMUEL H. MAYS, JR.
                              UNITED STATES DISTRICT JUDGE